01

02

03

04

05

06

07

08

09

10

11

12

                    UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF CALIFORNIA

PERRY SATCHELL,                    )
                                   )
         Petitioner,               )    CASE NO. 2:07-cv-01250-RSL-JLW
                                   )
         v.                        )
                                   )
D.K. SISTO, Warden,                )    REPORT AND RECOMMENDATION
                                   )
         Respondent.               )
_____    )

13       I.      SUMMARY

14       Petitioner Perry Satchell is currently incarcerated at the California State Prison, Solano

15  in Vacaville, California.  He was convicted by a jury of second degree murder with a firearm

16  enhancement in Los Angeles County Superior Court in May 1991, and sentenced to 20-years-

17  to-life with the possibility of parole.  He has filed a petition for writ of habeas corpus, together

18  with relevant portions of the state court record, under 28 U.S.C. § 2254 challenging his 2006

19  denial of parole by the Board of Parole Hearings of the State of California (the "Board").[1]

20  (*See* Docket 7, Part 1 at 1-33.)[2]  Respondent has filed an answer to the petition, and petitioner

21

22      _____

        [1] The Board of Parole Hearings replaced the Board of Prison Terms, which was abolished on July 1,
    2005.  *See* California Penal Code § 5075(a).
        [2] With his amended petition, petitioner provided the transcript of the 2006 parole hearing as well as the
    relevant portions of the state court record.  Petitioner's "exhibits" are not labeled, however.  (*See* Dkt. 7, Part 1

REPORT AND RECOMMENDATION -1

01  has filed a reply to the answer.  (*See* Dkt. 12; Dkt. 15.)  The briefing is now complete and this

02  matter is ripe for review.  The Court, having thoroughly reviewed the record and briefing of

03  the parties, recommends the Court deny the petition, and dismiss this action with prejudice.

04      II.   BACKGROUND

05      The Los Angeles County Superior Court set forth the following relevant facts:

06          The record reflects that on May 5, 1990, the Petitioner was in his bedroom
            when he heard noise outside and guessed that the victim, Reginald Carter, was
07          fighting with someone.  He armed himself with a gun and went out to the other
            room.  The Petitioner discovered that there was no fight, but began to argue
08          with Mr. Carter, because he had invited someone in who the Petitioner had
            previously argued with.  At some point during the argument, Mr. Carter and
09          the other man struggled with the Petitioner to get the gun.  During the struggle,
            the gun discharged and fired at the ceiling.  The victim then jumped back and
10          the Petitioner shot him in the neck, killing him.  The Petitioner claims that he
            shot the victim in self-defense, because he was afraid the victim was going to
11          use the gun on him if he was able to get it.

12  (Dkt. 7, Part 1 at 36.)  In addition, the Board noted during the hearing that petitioner's

13  girlfriend, who was also the victim's sister, had taken her two children into the kitchen during

14  the altercation.  (*See id.*, Part 2 at 91-92.)  After the shooting, petitioner walked into the

15  kitchen while holding his gun, and looked at her for approximately one minute before leaving

16  the house.  (*See id.* at 92.)

17      The commitment offense occurred on May 5, 1990, when petitioner was thirty-two

18  years old.  He was incarcerated two days after the incident, and subsequently convicted by a

19  jury of second degree murder with a firearm enhancement in Los Angeles County Superior

20  Court.  Petitioner was sentenced to 20-years-to-life with the possibility of parole, and his

21  minimum eligible parole date was set for March 17, 2003.  (*See id.*, Part 1 at 36.)  The parole

22

---

and Part 2.)  Respondent also included the state and Board record with the answer to the petition, but labeled the
majority of the exhibits in an inconsistent and disorganized manner.  (*See* Dkt. 12, Exs. A-F.)  As a result,
CM/ECF pagination is cited throughout the R&R for ease of reference.

REPORT AND RECOMMENDATION -2

01  denial which is the subject of this petition took place after a parole hearing held on November

02  7, 2006.  This was petitioner's first subsequent parole consideration hearing, as his initial

03  application for parole in 2002 was denied for three years.  (*See id*. at 7.)  As of the date of the

04  2006 parole hearing, petitioner was forty-nine years of age, and had been in custody for

05  approximately sixteen years.

06          After denial of his 2006 application, petitioner filed habeas corpus petitions in the Los

07  Angeles County Superior Court, California Court of Appeal, and California Supreme Court.

08  (*See* Dkt. 12, Ex. A at 2-21; *id*., Ex. C, Part 1 at 2-45; and *id*., Ex. E at 2-23.)  Those petitions

09  were unsuccessful.  (*See* Dkt. 7, Part 1 at 34-38.)  This federal habeas petition followed.

10  Petitioner contends his 2006 denial by the Board violated his Fifth and Fourteenth

11  Amendment Due Process rights.  Thus, petitioner does not challenge the validity of his

12  conviction, but instead challenges the Board's 2006 decision finding him unsuitable for

13  parole.

14          III.    STANDARD OF REVIEW

15          The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this

16  petition because it was filed after the enactment of AEDPA.  *See Lindh v. Murphy*, 521 U.S.

17  320, 326-27 (1997).  Because petitioner is in custody of the California Department of

18  Corrections pursuant to a state court judgment, 28 U.S.C. § 2254 provides the exclusive

19  vehicle for his habeas petition.  *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir.), *cert.*

20  *denied*, 543 U.S. 991 (2004) (providing that § 2254 is "the exclusive vehicle for a habeas

21  petition by a state prisoner in custody pursuant to a state court judgment, even when the

22  petitioner is not challenging his underlying state court conviction.").  Under AEDPA, a

     habeas petition may not be granted with respect to any claim adjudicated on the merits in state

REPORT AND RECOMMENDATION -3

01  court unless petitioner demonstrates that the highest state court decision rejecting his petition

02  was either "contrary to, or involved an unreasonable application of, clearly established

03  Federal law, as determined by the Supreme Court of the United States," or "was based on an

04  unreasonable determination of the facts in light of the evidence presented in the State court

05  proceeding."  28 U.S.C. § 2254(d)(1) and (2).

06      As a threshold matter, this Court must ascertain whether relevant federal law was

07  "clearly established" at the time of the state court's decision.  To make this determination, the

08  Court may only consider the holdings, as opposed to dicta, of the United States Supreme

09  Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000).  In this context, Ninth Circuit

10  precedent remains persuasive but not binding authority.  *See id.* at 412-13; *Clark v. Murphy*,

11   331 F.3d 1062, 1069 (9th Cir. 2003).

12      The Court must then determine whether the state court's decision was "contrary to, or

13  involved an unreasonable application of, clearly established Federal law."  *See Lockyer v.

14  Andrade*, 538 U.S. 63, 71 (2003).  "Under the 'contrary to' clause, a federal habeas court may

15  grant the writ if the state court arrives at a conclusion opposite to that reached by [the

16  Supreme] Court on a question of law or if the state court decides a case differently than [the]

17  Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 412-13.

18  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

19  state court identifies the correct governing legal principle from [the] Court's decisions but

20  unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  At all

21  times, a federal habeas court must keep in mind that it "may not issue the writ simply because

22  [it] concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly.  Rather that application must also be

REPORT AND RECOMMENDATION -4

01 [objectively] unreasonable." *Id.* at 411.

02       In each case, the petitioner has the burden of establishing that the state court decision

03 was contrary to, or involved an unreasonable application of, clearly established federal law.

04 *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).  To determine

05 whether the petitioner has met this burden, a federal habeas court looks to the last reasoned

06 state court decision because subsequent unexplained orders upholding that judgment are

07 presumed to rest upon the same ground.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04

08 (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007).

09       Finally, AEDPA requires federal courts to give considerable deference to state court

10 decisions, and state courts' factual findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1).

11 Federal courts are also bound by a state's interpretation of its own laws.  *See Murtishaw v.*

12 *Woodford*, 255 F.3d 926, 964 (9th Cir. 2001) (citing *Powell v. Ducharme,* 998 F.2d 710, 713

13 (9th Cir. 1993)).

14     IV.     FEDERAL HABEAS CHALLENGES TO STATE PAROLE DENIALS

15     A.     *Due Process Right to be Released on Parole*

16       Under the Fifth and Fourteenth Amendments to the United States Constitution, the

17 government is prohibited from depriving an inmate of life, liberty or property without the due

18 process of law.  U.S. Const. amends. V, XIV.  A prisoner's due process claim must be

19 analyzed in two steps: the first asks whether the state has interfered with a constitutionally

20 protected liberty or property interest of the prisoner, and the second asks whether the

21 procedures accompanying that interference were constitutionally sufficient.  *Ky. Dep't of*

22 *Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d

1123, 1127 (9th Cir. 2006).

REPORT AND RECOMMENDATION -5

01        Accordingly, our first inquiry is whether petitioner has a constitutionally protected

02  liberty interest in parole.  The Supreme Court articulated the governing rule in this area in

03  *Greenholtz v. Inmates of Neb. Penal,* 442 U.S. 1 (1979), and *Board of Pardons v. Allen,* 482

04  U.S. 369 (1987).  *See McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (applying

05  "the 'clearly established' framework of *Greenholtz* and *Allen"* to California's parole scheme).

06  The Court in *Greenholtz* determined that although there is no constitutional right to be

07  conditionally released on parole, if a state's statutory scheme employs mandatory language

08  that creates a presumption that parole release will be granted if certain designated findings are

09  made, the statute gives rise to a constitutional liberty interest.  *See Greenholtz*, 442 U.S. at 7,

10  12; *Allen*, 482 U.S. at 377-78.

11        As discussed *infra*, California statutes and regulations afford a prisoner serving an

12  indeterminate life sentence an expectation of parole unless, in the judgment of the parole

13  authority, he "will pose an unreasonable risk of danger to society if released from prison."

14  Title 15 Cal. Code Regs., § 2402(a).  The Ninth Circuit has therefore held that "California's

15  parole scheme gives rise to a cognizable liberty interest in release on parole."  *McQuillion*,

16  306 F.3d at 902.  To similar effect,  *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) held

17  that California Penal Code § 3041 vests all "prisoners whose sentences provide for the

18  possibility of parole with a constitutionally protected liberty interest in the receipt of a parole

19  release date, a liberty interest that is protected by the procedural safeguards of the Due

20  Process Clause."  This "liberty interest is created, not upon the grant of a parole date, but

21  upon the incarceration of the inmate."  *Biggs v. Terhune*, 334 F.3d 910, 915 (2003).  *See also*

22  *Sass*, 461 F.3d at 1127.

        Because the Board's denial of parole interfered with petitioner's constitutionally-

REPORT AND RECOMMENDATION -6

01  protected liberty interest, this Court must proceed to the second step in the procedural due

02  process analysis and determine whether the procedures accompanying that interference were

03  constitutionally sufficient.  "[T]he Supreme Court [has] clearly established that a parole

04  board's decision deprives a prisoner of due process with respect to this interest if the board's

05  decision is not supported by 'some evidence in the record.'"  *Irons*, 505 F.3d at 851 (citing

06  *Superintendent v. Hill*, 472 U.S. 445, 457 (1985) (holding the "some evidence" standard

07  applies in prison disciplinary proceedings)).  The "some evidence" standard requires this

08  Court to determine "whether there is any evidence in the record that could support the

09  conclusion reached by the disciplinary board."  *Hill*, 472 U.S. at 455-56.  Although *Hill*

10  involved the accumulation of good time credits rather than release on parole, later cases have

11  held that the same constitutional principles apply in the parole context because both situations

12  directly affect the duration of the prison term.  *See e.g., Jancsek v. Or. Bd. of Parole*, 833 F.2d

13  1389, 1390 (9th Cir. 1987) (adopting the "some evidence" standard set forth by the Supreme

14  Court in *Hill* in the parole context); *accord*, *Sass*, 461 F.3d at 1128-29); *Biggs*, 334 F.3d at

15  915; *McQuillion*, 306 F.3d at 904.

16       "The fundamental fairness guaranteed by the Due Process Clause does not require

17  courts to set aside decisions of prison administrators that have some basis in fact," however.

18  *Hill*, 472 U.S. at 456.  Similarly, the "some evidence" standard is not an invitation to examine

19  the entire record, independently assess witnesses' credibility, or re-weigh the evidence.  *Id.* at

20  455.  Instead, it is there to ensure that an inmate's loss of parole was not arbitrarily imposed.

21  *See id.* at 454.  The Court in *Hill* added an exclamation point to the limited scope of federal

22  habeas review when it upheld the finding of the prison administrators despite the Court's

    characterization of the supporting evidence as "meager."  *See id.* at 457.

REPORT AND RECOMMENDATION -7

01          B.      *California's Statutory and Regulatory Scheme*

02          In order to determine whether "some evidence" supported the Board's decision with

03   respect to petitioner, this Court must consider the California statutes and regulations that

04   govern the Board's decision-making.  *See Biggs*, 334 F.3d at 915.  Under California law, the

05   Board is authorized to set release dates and grant parole for inmates with indeterminate

06   sentences.  *See* Cal. Penal Code § 3040 and 5075, *et seq.*  Section 3041(a) requires the Board

07   to meet with each inmate one year before the expiration of his minimum sentence and

08   normally set a release date in a manner that will provide uniform terms for offenses of similar

09   gravity and magnitude with respect to their threat to the public, as well as comply with

10   applicable sentencing rules.  Subsection (b) of this section requires that the Board set a release

11   date "unless it determines that the gravity of current convicted offense or offenses, or the

12   timing and gravity of current or past convicted offense or offenses, is such that consideration

13   of the public safety requires a more lengthy period of incarceration." *Id.*, § 3041(b).  Pursuant

14   to the mandate of § 3041(a), the Board must "establish criteria for the setting of parole release

15   dates" which take into account the number of victims of the offense as well as other factors in

16   mitigation or aggravation of the crime.  The Board has therefore promulgated regulations

17   setting forth the guidelines it must follow when determining parole suitability.  *See* 15 CCR

18   § 2402, *et seq.*

19          Accordingly, the Board is guided by the following regulations in making a

20   determination whether a prisoner is suitable for parole:

21          (a) General. The panel shall first determine whether the life prisoner is suitable
             for release on parole. Regardless of the length of time served, a life prisoner
22           shall be found unsuitable for and denied parole if in the judgment of the panel
             the prisoner will pose an unreasonable risk of danger to society if released
             from prison.

01

02
    (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history;

03
past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other

04
commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or

05
control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on

06
the prisoner's suitability for release. Circumstances which taken alone
may not firmly establish unsuitability for parole may contribute to a pattern

07
which results in a finding of unsuitability.

08 15 CCR § 2402(a) and (b).  Subsections (c) and (d) also set forth suitability and unsuitability

09 factors to further assist the Board in analyzing whether an inmate should be granted parole,

10 although "the importance attached to any circumstance or combination of circumstances in a

11 particular case is left to the judgment of the panel." 15 CCR § 2402(c).

12     In examining its own statutory and regulatory framework, the California Supreme

13 Court in *In re Lawrence* recently held that the proper inquiry for a reviewing court is

14 "whether some evidence supports the *decision* of the Board … that the inmate constitutes a

15 current threat to public safety, and not merely whether some evidence confirms the existence

16 of certain factual findings."  *In re Lawrence*, 44 Cal.4th 1181, 1212 (2008).  The court also

17 asserted that the Board's decision must demonstrate "an individualized consideration of the

18 specified criteria, but "[i]t is not the existence or nonexistence of suitability or unsuitability

19 factors that forms the crux of the parole decision; the significant circumstance is how those

20 factors interrelate to support a conclusion of current dangerousness to the public."  *Id*. at

21 1204-05, 1212.  As long as the evidence underlying the Board's decision has "some indicia of

22 reliability," parole has not been arbitrarily denied.  *See Jancsek*, 833 F.2d at 1390.  As the

California courts have continually noted, the Board's discretion in parole release matters is

01 very broad.  *See Lawrence*, 44 Cal.4th at 1204.  Thus, the penal code, corresponding

02 regulations, and California law clearly establish that the fundamental consideration in parole

03 decisions is public safety and an assessment of a prisoner's current dangerousness.  *See id.*, at

04 1205-06.

05       C.     *Summary of Governing Principles*

06       By virtue of California law, petitioner has a constitutional liberty interest in release on

07 parole.  The parole authorities may decline to set a parole date only upon a finding that

08 petitioner's release would present an unreasonable present risk of danger to society if he is

09 released from prison.  Where the parole authorities deny release, based upon an adverse

10 finding on that issue, the role of a federal habeas court is narrowly limited.  It must deny relief

11 if there is "some evidence" in the record to support the parole authority's finding of present

12 dangerousness.  The penal code, corresponding regulations, and California law clearly support

13 the foregoing interpretation.

14       V.     PARTIES' CONTENTIONS

15       Petitioner contends that the Board violated his state and federal due process rights by

16 finding him unsuitable for parole without any evidence that he poses an unreasonable risk of

17 danger to society if released from prison.[3]  (*See* Dkt. 7, Part 1 at 9-33.)  Specifically,

18 petitioner claims that the Board found him unsuitable based upon the immutable facts of the

19 commitment offense.  (*See id*. at 24-27.)  In addition, petitioner argues the Board failed to

20 consider or give appropriate weight to evidence suggesting that petitioner was suitable for

21 parole.  (*See id*. at 31-32.)  Although petitioner cites the United States Court of Appeals for

22

      [3] We do not reach petitioner's claim that his state due process rights were violated, as state claims are not cognizable in a federal habeas petition. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (asserting that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

REPORT AND RECOMMENDATION -10

01 the Ninth Circuit's decision in *Hayward v. Marshall* as support for his petition, the panel

02 decision in that case has been withdrawn and the case is currently being reheard *en banc* by

03 that court.  As a result, the panel decision cannot be cited as precedent.  *See* 512 F.3d 536 (9th

04 Cir. 2008), *reh'g en banc granted,* 527 F.3d 797 (9th Cir. 2008) (providing that "the three-

05 judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit.").

06 (*See also* Dkt. 7, Part 1 at 24, 27-30.)

07         Respondent claims that petitioner does not have a constitutionally protected liberty

08 interest in being released on parole, that the "some evidence" standard is inapplicable in this

09 context, and that even if he does have a protected liberty interest, the Board adequately

10 predicated its denial of parole on "some evidence."  (*See* Dkt. 12 at 2-3, and 6-8.)

11 Accordingly, respondent argues that petitioner's due process rights were not violated by the

12 Board's 2006 decision, and the Los Angeles County Superior Court's Order upholding the

13 Board's 2006 parole denial was not an unreasonable application of clearly established federal

14 law.  (*See id.* at 4, and 7-8.)

15         VI.        ANALYSIS OF RECORD IN THIS CASE

16         A.        *Analysis*

17         The Board based its decision that petitioner was unsuitable for parole primarily upon

18 his commitment offense, as well as petitioner's past criminal history, escalating pattern of

19 criminal conduct, institutional behavior, failure to demonstrate adequate insight regarding the

20 commitment offense, insufficient documentation of participation in self-help programming,

21 and the psychological report's failure to provide an assessment of petitioner's ability to

22 function within the community, if released.  (*See* Dkt. 7, Part 2 at 91-95.)  *See also* 15 CCR §

2402(c)(1) (providing that a commitment offense carried out "in an especially heinous,

REPORT AND RECOMMENDATION -11

01  atrocious, or cruel manner" constitutes a factor tending to indicate unsuitability for parole); 15

02  CCR § 2402(b) (requiring the Board to consider a prisoner's "past criminal history, including

03  involvement in other criminal misconduct which is reliably documented," "the base and other

04  commitment offenses, including behavior before, during, or after the crime," "past and

05  present attitude toward the crime," as well as "any other information which bears on the

06  prisoner's suitability for release"); 15 CCR § 2402(c)(6) (providing that "serious misconduct"

07  committed in prison or in jail constitutes a factor tending to indicate unsuitability for parole).

08  After considering all reliable evidence in the record, the Board concluded that evidence of

09  petitioner's positive behavior in prison did not outweigh evidence of his unsuitability for

10  parole.  (*See* Dkt. 7, Part 2 at 94.)

11        With regard to the circumstances of the commitment offense, the Board concluded that

12  the offense was carried out in an especially heinous, atrocious, or cruel manner.  (*See id*. at

13  91.)  *See also* 15 CCR § 2402(c)(1).  Petitioner armed himself with a handgun, and engaged in

14  an altercation with his unarmed victim.  (*See* Dkt. 7, Part 2 at 91.)  When the victim and

15  another individual attempted to take the gun from petitioner, the gun discharged at the ceiling.

16  (*See id.*, Part 1 at 36.)  Although the victim jumped back, petitioner fired a second shot at the

17  victim at a close range, hitting him in the neck and killing him.  (*See id*., Part 2 at 91.)

18  Petitioner then followed his girlfriend, who had fled to the kitchen with her two children to

19  avoid the fight, and looked at her for about a minute while continuing to hold his gun in his

20  hands.  (*See id*. at 90, and 98.)

21        Because the jury, by its verdict, found petitioner did not kill the victim in self-defense,

22  this provided some evidence to support the Board's conclusion that the murder was carried

out in a dispassionate and calculated manner, as well as a manner which demonstrates an

REPORT AND RECOMMENDATION -12

01  exceptionally callous disregard for human suffering.  (*See id*. at 91, and 95.)  *See also* 15 CCR

02  § 2402(c)(1)(B) and (D).  The Board also concluded that the motive for the crime was

03  inexplicable or very trivial in relation to the offense, because there were opportunities for

04  petitioner to walk away from the fight.  (*See* Dkt. 7, Part 2 at 97.)  *See also* 15 CCR §

05  2402(c)(1)(E).  He chose instead to resort to violence, even though his girlfriend, who was the

06  victim's sister, and her two children were also in the house.  (*See* Dkt. 7, Part 2 at 97-98.)  The

07  evidence of the circumstances surrounding petitioner's commitment offense and the trivial

08  motive therefore provide some evidence to support the Board's finding that the murder was

09  carried out in an especially heinous, atrocious, or cruel manner.

10          In conjunction with this claim, petitioner requests that this Court take judicial notice of

11  several superior court orders in unrelated habeas cases because they contain statistical

12  evidence concerning the Board's reliance upon the commitment offense unsuitability factor to

13  deny parole in other cases.  (*See* Dkt. 7, Part 1 at 26-27.)  *See also* Fed. R. Evid. 201(b)(2)

14  (permitting the court to take judicial notice of a fact that is "not subject to reasonable dispute

15  in that it is … (2) capable of accurate and ready determination by resort to sources whose

16  accuracy cannot reasonably be questioned.").  Petitioner does not provide the Court with these

17  state court orders, however.  Petitioner also fails to explain how the orders, even if construed

18  by the Court as supplemental briefing, are relevant to this Court's determination of whether

19  there is some evidence to support the Board's finding that the commitment offense in this case

20  was carried out in an especially heinous, atrocious, or cruel manner by petitioner.  Judicial

21  notice of unrelated state court orders is therefore inappropriate.  The Board's findings

22  regarding petitioner's offense were based upon an "individualized consideration of the

specified criteria," and were amply supported by evidence in the record.  *See Lawrence*, 44

01  Cal.4th at 1212.

02      The second and third factors relied upon by the Board were petitioner's past criminal

03  history and escalating pattern of criminal conduct.  (*See* Dkt. 7, Part 2 at 92.)  The applicable

04  guidelines direct the Board to consider "a prisoner's past criminal history, including

05  involvement in other criminal misconduct which is reliably documented," and "behavior

06  before, during, and after [the base and other commitment offenses]."  *See* 15 CCR § 2402(b).

07  Petitioner challenges the Board's consideration of his prior arrests for purchasing a gun that

08  had been stolen from the New York Treasury Department, and an assault with a deadly

09  weapon for backing a vehicle, the deadly weapon, into a fence and causing a gate to fall on

10  someone, because he was not ultimately convicted of those offenses.  In support of his

11  argument, petitioner cites § 2326 of Title 15 of the California Code of Regulations.  (*See*

12  Dkt. 7, Part 1 at 16.)  But that section relates to the selection of parole dates, not the

13  determination of suitability for parole.  In contrast, the California Court of Appeal has

14  approved the consideration of arrests (without convictions) in determining suitability for

15  parole.  *See In re Gilbert Fuentes*, 37 Cal.Rptr.3d 426, 433-34 (Cal. Ct. App. 2005).  As a

16  result, the Board properly considered petitioner's previous arrests, as well as his prior

17  misdemeanor conviction for carrying a concealed weapon.  (*See* Dkt. 7, Part 2 at 24.)

18  Petitioner's prior misdemeanor conviction and arrests provide some evidence to support the

19  Board's finding that petitioner has a past criminal history, and has demonstrated an escalating

20  pattern of criminal conduct which culminated in the commitment offense.

21      The fourth factor relied upon by the Board was petitioner's institutional behavior.

22  (*See id*. at 92-93.)  *See also* 15 CCR § 2402(c)(6) (providing that serious misconduct in prison

or jail constitutes a factor indicating unsuitability for parole).  Specifically, the Board noted

01  that since his incarceration, petitioner has received seven 128A chronos and three 115 reports

02  for disciplinary violations.  (*See* Dkt. 7, Part 2 at 30-32, and 92-94.)  Petitioner's most serious

03  disciplinary violation was a 115 report received on October 22, 1995, for threatening force

04  and violence against a new cellmate because petitioner objected to his sexual orientation.

05  (*See id*. at 31-32.)  Petitioner's most recent disciplinary violation occurred in 2002 when he

06  failed to obtain permission to keep onions grown by inmates for donation to food banks.[4]

07  (*See id*. at 30-31.)  Petitioner's disciplinary violations in prison provide some evidence to

08  support the Board's finding that petitioner's institutional behavior constitutes a factor

09  indicating unsuitability for parole.

10          The fifth and sixth factors relied upon by the Board were petitioner's failure to

11  demonstrate adequate insight regarding the commitment offense, and insufficient

12  documentation of his participation in self-help programming in prison.  (*See id*. at 92-93.)

13  The Board is required to consider a petitioner's "past and present attitude toward the crime."

14  *See* 15 CCR § 2402(b).  Petitioner maintains that he killed the victim as an act of self-defense,

15  and therefore disputes his murder conviction.  (*See* Dkt. 7, Part 2 at 101.)  The Board

16  instructed petitioner "not to try to accommodate the Board by changing his story to a non-

17  truth," but encouraged him to shift his focus away from the trial toward his own self-help

18  programming in prison.  (*See id*.)  The Board commended petitioner for participating in some

19  self-help and therapy programs such as anger and stress management, but found that his

20  participation in such programs at the time of the hearing "failed to demonstrate evidence of

21

22          [4] Although the Los Angeles County Superior Court decision referred to petitioner's 2002 disciplinary
violation as a "somewhat recent serious discipline," it seems likely the superior court was actually referring to
the 1995 disciplinary violation involving petitioner's threats of force and violence against his new cellmate.  (*See*
Dkt. 7, Part 1 at 37.)

01  positive change." (*Id*. at 92, and 95; *see also* Dkt. 7, Part 1 at 41-48).  As a result, the Board

02  asserted that petitioner needed "additional documented self-help in order to face, discuss,

03  understand, and cope with stress in a nondestructive manner … [because] [u]ntil progress is

04  made the prisoner continues to be unpredictable and a threat to others." (Dkt. 7, Part 2 at 95;

05  *see also id*. at 33-39.)  The Board found that petitioner needed to "look deep inside yourself to

06  have an understanding of what motivated you to [murder the victim].  Why you did it.  Why

07  you went through the motions that you did … and why given a similar situation you would

08  not repeat that." (*Id*. at 99.)  Petitioner's statements to the panel during the hearing, as well as

09  the record, provide some evidence to support the Board's conclusion that petitioner failed to

10  demonstrate sufficient insight regarding the commitment offense, or provide sufficient

11  documentation of his participation in self-help programming in prison.

12          Finally, the Board found that the most recent psychologist's report was inconclusive,

13  because it did not include an assessment of petitioner's risk of violence compared to an

14  average citizen in the community.  (*See id*. at 94, and 110.)  Although the report asserted that

15  petitioner presents a low risk of dangerousness and violence when compared to other life term

16  inmates, the Board regarded the report as inconclusive as to petitioner's dangerousness, as the

17  report did not compare petitioner's dangerousness with that of average citizens.  (*See id*. at 46,

18  and 110.)  The report also included the following qualifications, "If [petitioner] is provided

19  with a stable living environment, employment, and remains illegal drug and alcohol substance

20  free, and does not associate with negative individuals, he would have a better chance of

21  coping with his release." (*See id*. at 110.)  Based upon the above, the Board found that the

22  psychological report failed to provide a clear assessment of petitioner's ability to function

    within the community if released.  (*See id*. at 94.)  Thus, the most recent psychological

01  report's omission of this assessment, coupled with the above-mentioned constraints on

02  petitioner's release environment, constitute some evidence to support the Board's finding that

03  the most recent psychological report was inconclusive regarding petitioner's ability to

04  function within the community without reoffending if released on parole.

05       As stated above, it is beyond the authority of a federal habeas court to determine

06  whether evidence of suitability outweighs the circumstances of the commitment offense,

07  together with any other reliable evidence of unsuitability for parole.  While petitioner

08  contends that the Board should have considered the "significant stress" suffered by petitioner

09  as a result of living in a "gang and crime infested neighborhood," the Board's failure to do so

10  was permissible.  (*See id.*, Part 1 at 31-32.)  *See* 15 CCR § 2402(d)(4).  The Board has broad

11  discretion to determine how suitability and unsuitability factors interrelate to support its

12  conclusion of current dangerousness to the public.  *See Lawrence*, 44 Cal.4th at 1212.

13       Contrary to petitioner's argument that the Board failed to consider or give appropriate

14  weight to most of the parole suitability rules which favored petitioner, the Board

15  acknowledged that petitioner has made strong residential and employment plans for release,

16  and has marketable skills as a subcontractor.  (*See* Dkt. 7, Part 2 at 50-53.)  *See also* 15 CCR

17  § 2402(d)(8).  Specifically, the Board cited petitioner's employment offer to work as a

18  subcontractor doing emergency board ups and fire repair work.  (*See* Dkt. 7, Part 2 at 50.)

19  The Board considered petitioner's acquisition of his GED, completion of his building

20  maintenance vocation, lack of a juvenile criminal record, letters submitted by family members

21  in support of his release, and his relatively stable social history.  (*See id*. at 23, 26-29, 36-39,

22  54-55, and 95.)  The Board also commended petitioner for the progress he has made through

his involvement with Buddhism, and encouraged him to document the self-help and religious

REPORT AND RECOMMENDATION -17

01  books he reads in preparation for future parole hearings.  (*See id.* at 49, and 95-96.)  It is

02  therefore an inaccurate characterization of the record to say that the Board failed to consider

03  evidence that favored petitioner, or found him unsuitable for parole based solely upon the

04  commitment offense.  (*See id.*, Part 1 at 31-32.)  Although the Board praised petitioner's

05  progress in prison, it determined that his commitment offense, past criminal history,

06  escalating pattern of criminal conduct, institutional behavior, failure to demonstrate adequate

07  insight regarding the commitment offense, insufficient documentation of his participation in

08  self-help programming, and the psychological report's failure to provide an assessment of

09  petitioner's ability to function within the community if released, indicate that he remains an

10  unreasonable risk of danger to society if released on parole.

11           B.        *State Court Proceedings*

12           Petitioner's habeas petitions filed in the California Court of Appeal and California

13  Supreme Court contained the same claims as his Los Angeles Superior Court petition, and

14  both petitions were summarily denied.  (*See* Dkt. 12, Ex. A at 2-21; *id.*, Ex. C, Part 1 at 2-45;

15  *id.*, Ex. E at 2-23; Dkt. 7, Part 1 at 34-35.)  The parties agree that petitioner has properly

16  exhausted his state court remedies, and timely filed the instant petition.  (*See* Dkt. 7, Part 1 at

17  1-8; Dkt. 12 at 2.)  This Court reviews the Los Angeles County Superior Court's Order

18  upholding the Board's decision to determine whether it meets the deferential AEDPA

19  standards, as it is the last reasoned state court decision.  *See Ylst*, 501 U.S. at 803-04.

20           In a reasoned decision denying petitioner's request for habeas relief, the Los Angeles

21  County Superior Court asserted that based upon its review of the record, the Board's decision

22  was supported by some evidence.  (*See* Dkt. 7, Part 1 at 36.)  The superior court reviewed the

facts of the commitment offense, the record of the parole hearing, and the Board's findings

01  regarding both suitability and unsuitability factors.  (*See id*. at 36-37)  Specifically, the court

02  noted that the Board based its decision primarily upon the commitment offense, but also

03  considered petitioner's prior arrest for assault with a deadly weapon, his three 115s, as well as

04  his limited self-help programming.  (*See id*. at 37.)  It concluded that "although these factors,

05  alone, may not justify a finding of unsuitability, the Board may properly consider them as

06  relevant to the determination of whether the Petitioner is suitable for parole."  (*Id*.)  The

07  superior court also agreed with the Board's finding that the motive was very trivial in relation

08  to the offense because "[a]lthough the Petitioner claims that he believed that he was acting in

09  self-defense, the record indicates that the victim did not provoke the Petitioner in any way

10  when he initially brought the gun into the room.  Additionally, the victim was unarmed and

11  was not struggling with the Petitioner when he fired the second shot, which killed the victim."

12  (*Id*.)  Thus, based upon the fact that "there is some evidence that his motive was very trivial in

13  relation to the offense; because of his limited self-help program participation; and because of

14  his somewhat recent serious discipline in 2002,"[5] the superior court concluded that the

15  Board's decision to deny the petitioner parole for a period of two years was within its broad

16  discretion.  (*Id*.)  Because the decisions of both the state court and the Board were supported

17  by "some evidence," there is no need to reach respondent's argument that another standard

18  applies.

19      VII.   CONCLUSION

20          Given the totality of the Board's findings, there is some evidence that petitioner's

21  release as of the date of the Board's decision, November 7, 2006, would have posed an

22

_____

[5] The superior court was probably referring to a disciplinary incident in 1995 for threatening force and violence against a new cellmate.  The 2002 discipline resulted from bringing onions to his cell without permission.  *See* discussion *supra* at 14-15.

REPORT AND RECOMMENDATION -19

01  unreasonable risk to public safety.  The Los Angeles County Superior Court's Order

02  upholding the Board's decision was therefore not contrary to, or an unreasonable application

03  of, clearly established federal law, or based on an unreasonable determination of facts.

04  Accordingly, I recommend the Court find that petitioner's federal due process rights were not

05  violated and that the petition be denied, and this action be dismissed with prejudice.

06      This Report and Recommendation is submitted to the United States District Judge

07  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days

08  after being served with this Report and Recommendation, any party may file written

09  objections with this Court and serve a copy on all parties.  Such a document should be

10  captioned "Objections to Magistrate Judge's Report and Recommendation."  Failure to file

11  objections within the specified time may waive the right to appeal the District Court's Order.

12  *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  A proposed order accompanies this

13  Report and Recommendation.

14      DATED this 2nd day of June, 2009.

15

16

17                          JOHN L. WEINBERG
                            United States Magistrate Judge
18

19

20

21

22

REPORT AND RECOMMENDATION -20